### STATE v. THOMAS LEE REDDISH.

(Filed 20 January, 1967.)

**1. Criminal Law § 38;   Automobiles § 72—**

Where there is evidence that defendant remained some 40 minutes at the scene of the accident before he was taken to the hospital, with no evidence from any member of the crowd that gathered that defendant was intoxicated or even had the odor of alcohol about him, testimony by a patrolman that some hour and fifty minutes after the accident he smelled the odor of alcohol on defendant while defendant was in the hospital, is insufficient to permit an inference that defendant was under the influence of intoxicants at the time of the accident.

**2. Negligence § 31—**

Civil negligence is not enough to establish criminal responsibility, but culpable negligence must be predicated upon such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others, and while the wilful, wanton, or intentional violation of a safety statute constitutes culpable negligence, a mere unintentional violation of such statute alone does not.

**3. Automobiles § 59—**

The evidence tended to show that defendant and deceased were traveling west in the right lane of a four-lane highway, that defendant attempted to pass at a point where the exit to the right permitted a traveler to leave the four-lane highway and enter another highway, that deceased intended to turn off to his right, and that the right front of defendant's car struck the left rear of deceased's car, resulting in fatal injury. There was no evidence that deceased gave any signal of his intent to turn or slow down, and no sufficient evidence to show that defendant was exceeding the maximum speed limit or that he was intoxicated. *Held:* The evidence is insufficient to sustain a verdict of manslaughter.

APPEAL by defendant from *Hobgood, J.,* August, 1966 Criminal Session, ORANGE Superior Court.

The defendant, Thomas Lee Reddish, was indicted, tried, convicted, and sentenced for the crime of manslaughter. The charge grew out of a rear-end collision between the 1952 Chevrolet which William Wyatt Overman was driving west on Interstate 85, and a red Ford in which the defendant Reddish was following in the same direction. Interstate 85 is a dual lane, or divided highway. The north section is a concrete strip, 24 feet wide, consisting of two lanes, both for west-bound traffic. An asphalt shoulder nine feet wide joins the outside lane. The similar south section is for east-bound traffic. The asphalt shoulder joins the south traffic lane.

The fatal accident occurred at 8:10 a.m. on November 26, 1965, at the point in Orange County where the exit from I-85 enters U. S. 70. Approaching this exit going west, Interstate 85 is straight and

slightly downgrade for approximately half a mile. Two eye-witnesses to the accident testified for the State. Mr. John M. Dunn was driving eastwardly on the south section at 55-60 miles per hour. When he was about 400 feet away he saw the two vehicles involved in the accident. The defendant's Ford was about 10 feet behind the Overman Chevrolet. Both were in the north lane. "(I)t [the Reddish Ford] was traveling approximately 60 miles per hour. When he got up to the back of Mr. Overman's car it appeared like he was going to pass. . . . When the impact happened . . . the Overman car went up the bank [to the right] . . . and turned over. The Reddish car . . . came across the median . . ." and stopped in the south lane for east-bound traffic. When the Overman car hit the bank and turned over, Overman was thrown out and fatally injured. The right front of the Reddish Ford hit the left rear of the Overman Chevrolet.

Another eye-witness, Mrs. Barbara Latta, had entered the south section of Interstate 85 from U. S. 70 and was driving eastwardly at 50 to 55 miles per hour. "I observed a 1965 red Ford belonging to Mr. Reddish coming down, headed west towards Greensboro, and he was traveling at a high rate of speed. And he came down and he went to pass Mr. Overman and he hit him on the left rear bumper and again on the left side. . . . Mr. Overman was fixing to turn off to go on 70. . . . I don't know whether the Reddish car was to the south of the center line when the cars collided." She was about 200 feet away when she first saw the vehicles. After the accident she observed the defendant about the scene of the accident and he was still there when she left. The patrolman had not arrived.

Highway Patrolman Kirby investigated the accident and testified as a State's witness. He arrived at the scene of the accident at 8:40 a.m. There were pressure marks from the point of impact extending 377 feet to the Reddish Ford which had crossed the median and had come to rest in the south lane for east-bound traffic. "I talked with the defendant Reddish . . . at Duke Hospital at around 10:00 a.m. He had some head injuries that the doctor was working on . . . I believe taking stitches in his scalp." The witness stated he "smelled the odor of alcohol on or about the defendant at the time."

At the conclusion of the State's evidence, the defendant moved for a directed verdict of not guilty, rested without introducing evidence, and renewed the motion. In both instances the court declined to allow it, and the defendant took exceptions. The jury returned a verdict of guilty. From a judgment of imprisonment for 18 months, the defendant appealed.

*T. W. Bruton, Attorney General, William W. Melvin, Assistant Attorney General, for the State.*
*Blackwell M. Brogden for defendant appellant.*

HIGGINS, J. Although he has other assignments of error, the defendant places his chief reliance on No. 5 which challenges the sufficiency of the evidence to survive his motions to dismiss. The challenge requires us to determine, as a matter of law, whether the State offered evidence sufficient to permit a legitimate inference of defendant's guilt.

The State's evidence discloses that both the deceased and the defendant were driving their automobiles westwardly on Interstate 85. The defendant attempted to pass the deceased at a point where the exit to the right permitted a traveler to leave 85 and enter U. S. 70. Mrs. Latta, for the State, testified, "Mr. Overman was fixing to turn off to go on 70." Necessarily, he could make the turn at a relatively slow speed. The law obligated him to signal his intent to turn and to slow down so a following motorist could govern himself accordingly. Did Mr. Overman give any signal? There was no evidence. Mrs. Latta said she did not know whether the Reddish car was south of the center line when the cars collided. She was the witness closest to the scene. The defendant had a legal right to pass to the left. He failed to give himself sufficient passing room. This was a miscalculation but insufficient to show a wanton, wilful, and reckless indifference to the rights of other travelers on the highway.

Was the defendant violating the speed law? What was the maximum on 85 for passenger vehicles? The Highway Commission has authority upon proper findings to post a maximum at 65 miles per hour. There is no evidence either way as to whether the Highway Commission had exercised its prerogative and posted a speed limit. This may be noted, however. The State's witness, Mr. Dunn, stated he was driving at 55 or 60 miles per hour. Ordinarily, one will not admit, especially in court and under oath, that he was driving 60 if the limit is 55. Mr. Dunn estimated the defendant's speed at 60. Mrs. Latta said he was speeding — a conclusion. She did not offer an opinion as to his speed. In fact, her opportunity to judge speed is not established by the evidence.

After the accident the defendant, though injured himself, remained at least 40 minutes before he was taken to the hospital. A crowd had gathered. There was no evidence of liquor or the smell of alcohol about him — and certainly no evidence that he was intoxicated. The Highway Patrolman, at least an hour and 50 minutes after the accident "smelled the odor of alcohol *about* the defendant"

while he was in the hospital undergoing treatment for his head injuries. The evidence is not sufficient to permit an inference the defendant was under the influence of liquor at the time of the accident, or at the time the witness saw him.

Civil negligence is not enough to establish criminal responsibility. *State v. Phelps,* 242 N.C. 540, 89 S.E. 2d 132; *State v. Becker,* 241 N.C. 321, 85 S.E. 2d 327; *State v. Cope,* 204 N.C. 28, 167 S.E. 456. "Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *State v. Roop,* 255 N.C. 607, 122 S.E. 2d 363. "The violation of a safety statute which results in injury or death will constitute culpable negligence if the violation is wilful, wanton, or intentional. But, where there is an unintentional or inadvertent violation of a statute, such violation standing alone does not constitute culpable negligence." *State v. Hancock,* 248 N.C. 432, 103 S.E. 2d 491.

The evidence in this case, when tested by the foregoing rules, is insufficient to sustain a verdict of manslaughter. The court committed error in denying the motion for a directed verdict of not guilty.

Reversed.