## STATE v. CHARLES MASSEY, JR.

(Filed 11 October, 1967.)

**1. Homicide § 6—**

The common-law definition of involuntary manslaughter includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act in a culpably negligent manner, and from the culpably negligent failure to perform a legal duty.

**2. Automobiles § 110—**

Culpable, or criminal, negligence is something more than actionable negligence in the law of torts; it is such recklessness, proximately resulting in injury or death as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.

**3. Same—**

The intentional, wilful or wanton violation of a safety statute which proximately results in injury or death is culpable negligence; but an unintentional violation of a safety statute, unaccompanied by recklessness or probable consequences of a dangerous nature, is not such negligence as imports criminal responsibility.

**4. Automobiles § 113— Evidence that defendant was driving on the left side of street when he struck child held insufficient, standing alone, to go to jury on involuntary manslaughter.**

The State's evidence tended to show that the defendant, driving on a residential street at approximately 7 p.m. on a foggy, autumn evening, at a speed of about 30 m.p.h., approached a group of children playing on the sidewalk on the right side of the street, that a boy ran out into the street, and that the defendant was operating his car on the left side of the street at the time he struck the boy. *Held:* The evidence was insufficient to withstand nonsuit on charge of involuntary manslaughter, since, in the absence of other evidence surrounding the accident, it cannot be said that defendant's driving on the left side of the street, in violation of G.S. 20-146, constituted culpable negligence or was a proximate cause of the child's death.

**5. Automobiles § 110—**

The mere fact that a pedestrian is killed when struck by an automobile in a public street, nothing else appearing, does not raise an inference of culpable negligence.

**6. Same—**

Failure to keep a proper lookout does not constitute negligence unless the failure is accompanied by dangerous speed or perilous operation.

**7. Automobiles § 131—**

Evidence in this case *held* sufficient to support a charge of failing to stop an automobile after an accident resulting in death of a person. G.S. 20-166.

APPEAL by defendant from *Clarkson, J.,* 30 January 1967 Regular Criminal "A" Session of MECKLENBURG.

STATE *v.* MASSEY.

Defendant was tried upon a bill of indictment, which charged him with the felonious killing of Michael Frazier. He was convicted of involuntary manslaughter and sentenced to ten years in the State's prison. On appeal, defendant's only assignment of error is that the court erred in denying his motion for nonsuit made at the close of all the evidence.

*Attorney General T. W. Bruton by Assistant Attorney General William W. Melvin and Staff Attorney T. Buie Costen for the State. T. O. Stennett for defendant appellant.*

SHARP, J. Both the State and defendant offered evidence. The State's evidence, considered in the light most favorable to it, shows the following facts: Gibbs Street in Charlotte is a 2-lane, 18-foot-wide roadway without curbing. On 26 October 1966, a few minutes before 7:00 p.m., defendant backed his 1959 red-and-white Ford out of a driveway between Persons and Oaklawn on Gibbs Street. He "took off . . . running about thirty miles per hour up the street" toward Oaklawn. In addition to the driver, there were five people in the automobile. It was drizzling, and the weather was foggy. The glass in the back was also "foggy." A group of children, which included Michael Frazier, were playing on the right side of the street on the sidewalk. As defendant's car approached the children, Michael, looking backward, ran out into the street in front of the automobile. James Stover, one of the occupants of the front seat, said to defendant, "Look out, you are going to hit the child." Stover then threw his arm over his face. Defendant applied his brakes, but the car hit the child with a "bump." Stover told defendant he had hit the child. Defendant replied that he knew it but, disregarding the pleas of two of his passengers that he stop, he kept going. The reason he gave was that he had no insurance on his car. Defendant then began to drive crazily, beat on his steering wheel, and to say "maybe he had killed somebody." His speed and manner of driving so alarmed his passengers that they made a concerted effort to get him to stop. After he had driven about four miles, they did prevail upon him to stop and let Stover do the driving. Stover returned three of the passengers to their home, where an inspection of the automobile revealed a dent on the right side of the hood or fender and a crack in the windshield on the right side. Stover then drove defendant to South Carolina. There, after taking the license plate off the car and dropping it into a well, defendant left the automobile in a pasture about 2 miles from Lancaster. Later that night, one of defendant's relatives drove them back to Charlotte.

When the police arrived at the scene of the accident on Gibbs Street at 7:00 p.m., they found Michael 150-200 feet from the intersection of Persons Street. "It was not on the hard surface." The boy was bleeding from his nose and mouth. His teeth were knocked out, and he had injuries on the back of his head. He died about midnight in the hospital.

James Stover, who was riding in the front seat of defendant's automobile at the time it hit the child, testified that defendant was on his right side of the road and that the boy came into the street from the right. John Ford, a pedestrian, who testified that he saw the accident, said that the car was on the left side of the street at the time it struck the boy. Ford said that he was walking on the left side of Gibbs Street, going toward Oaklawn, and that he was almost hit as defendant passed. He said: "I saw the child standing on the side of the street. I didn't see him enter the street. I saw this automobile strike that child. After the automobile struck the child it slowed down, but it didn't come to a complete stop, and then it pulled off again."

Defendant's only evidence was his testimony, which tended to show:

Defendant had no driver's license and no insurance on his car. For that reason, he never drove it when he could obtain a driver. James Stover, and not defendant, was driving the automobile which struck the child. Stover was driving about 25-30 MPH on the right-hand side of the road when the boy, one of a group of 5-6 children, ran into the road in front of defendant's automobile at a time when it "couldn't possibly be stopped." After he hit the child, Stover stopped the car but pulled off immediately. Later that evening they took the automobile to South Carolina.

"The common-law definition of involuntary manslaughter includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act done in a culpably negligent manner, and from the negligent failure to perform a legal duty." *State v. Stansell*, 203 N.C. 69, 71, 164 S.E. 580, 581. In *State v. Cope*, 204 N.C. 28, 167 S.E. 456, Stacy, C.J., laid down the criteria for determining criminal responsibility in automobile-accident cases. Criminal negligence is something more than actionable negligence in the law of torts; it is such recklessness, "proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Id.* at 30, 167 S.E. at 458. Under this definition "[a]n intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately

results in injury or death, is culpable negligence. . . . But an unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility." *Id.* at 31, 167 S.E. at 458; *accord, State v. Tingen,* 247 N.C. 384, 100 S.E. 2d 874.

Measured by the gauge of *State v. Cope, supra,* does the evidence in the case support the jury's verdict of manslaughter? As defendant drove along Gibbs Street, it was his duty to drive on his right half of the street, G.S. 20-146, to drive at a speed which was reasonable and prudent under the existing conditions, and to operate his vehicle at a speed within the maximum permitted by law in a residential area. G.S. 20-141. It was also his duty to keep a careful lookout in the direction of his travel. When he saw — or should have seen — the children beside the street, he had a duty to warn them of his approach, to reduce his speed, and to bring his car under such control that he could stop if one of the children darted into the street. *State v. Gash,* 177 N.C. 595, 99 S.E. 337. Did defendant fail to perform these duties? If so, in what manner did he fail, and was such failure the proximate cause of Michael Frazier's death? To answer these questions, we must first answer others.

At the time he struck the decedent, how far was defendant from the driveway from which he started? How far was the child's body thrown from the hard-surface by the impact? When should defendant, in the exercise of a proper lookout, have seen the children on the sidewalk? Was the street lighted? How old were the children? How old was the deceased? Was it an area in which children should have been expected to be playing on the street at 7:00 on a rainy, foggy night in the latter part of October? Was there anything to obstruct the driver's view of the children as he approached them? Was the center of the street marked by a white line or some other indicium? Where was the impact in relation to the center of the street? The record provides no answers to these questions.

The mere fact that a pedestrian (child or adult) is killed when run over by an automobile in a public street does not make out a *prima facie* case of civil negligence. *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661. *A fortiori,* it does not give rise to an inference of culpable negligence. *State v. Reddish,* 269 N.C. 246, 152 S.E. 2d 89. Were we to assume — which we may not — that defendant was not keeping a proper lookout, such failure alone would not constitute criminal negligence. "[D]angerous speed or perilous operation" would have

to be added. *Dunlap v. Lee,* 257 N.C. 447, 450, 126 S.E. 2d 62, 65; *State v. Becker,* 241 N.C. 321, 85 S.E. 2d 327.

The evidence discloses that the accident occurred in a residential area. No witness, however, estimated defendant's speed to be in excess of 30 MPH, which is 5 miles below the maximum permitted for a residential district. G.S. 20-141(2). The testimony of the State's witness Ford tends to show that defendant was operating his vehicle on the left side of the 18-foot street at the time he hit the child. If he was, defendant violated G.S. 20-146. For the violation to constitute culpable negligence, however, it must have been a proximate cause of the death of Michael Frazier. *State v. Tingen, supra.* Furthermore, "[i]nadvertently allowing a motor vehicle to encroach upon the wrong side of the road does not in all instances constitute culpable or criminal negligence or a reckless disregard for the safety of others, upon which a conviction for involuntary manslaughter may be based, in the event another is killed as a result thereof." 7 Am. Jur. 2d Automobiles and Highway Traffic § 282 (1963), citing *State v. Stansell, supra; accord, State v. Dupree,* 264 N.C. 463, 142 S.E. 2d 5; *State v. Roop,* 255 N.C. 607, 122 S.E. 2d 363. Assuming the truth of Ford's testimony that defendant was somewhere on the left side of the street when he struck decedent, we may speculate that, had defendant been to his right of the center, the boy would have run into the *side* of the automobile or that he might have traversed defendant's lane and crossed the center, line without being hit, or that defendant might have seen him a split second earlier. A distance of only 9 feet was involved. Considering the deficiencies in the development of the State's case, we cannot say that defendant's driving to the left of the center of the street was either culpable negligence or a proximate cause of the tragic death of Michael Frazier. "Verdicts may not be predicated upon speculation." *Tysinger v. Dairy Products, supra* at 25, 36 S.E. 2d at 251. The court erred when it denied defendant's motion for nonsuit. *State v. Hancock,* 248 N.C. 432, 103 S.E. 2d 491.

Upon the State's evidence, as disclosed by the case on appeal, defendant is guilty of the felony of failing to stop after being involved in a collision resulting in death to a person, G.S. 20-166 and G.S. 20-182. Upon this record he was convicted of the wrong crime. It, however, reveals no reason why the solicitor, if so advised, may not yet put him on trial for a violation of G.S. 20-166.

Reversed.