STATE OF NORTH CAROLINA v. LAWRENCE RAY MARKHAM,
CASES No. 68Cr278, -279

No. 6915SC343

(Filed 23 July 1969)

1. **Criminal Law §§ 42, 55—** **evidence of blood and human flesh — nonexpert testimony**

     Trial court properly allowed nonexpert witnesses, one of them a highway patrolman, to testify that they observed particles of flesh and blood on the right fender of defendant's automobile.

2. **Automobiles § 131—** **hit-and-run driving — identity of defendant — sufficiency of evidence**

     Issue of defendant's guilt of "hit-and-run" driving was properly submitted to the jury where the State's evidence tended to show that a pedestrian on a rural paved road was fatally struck at 2:20 p.m. by a black 1959 Chevrolet which failed to stop, that the defendant was seen at approximately 2:30 p.m. traveling at a speed of 75 miles per hour in a black Chevrolet and that a piece of dark cloth was hanging from the right fender of the automobile, that a piece of material was found missing from the coat worn by deceased, that defendant was seen by several other witnesses on the rural road just prior to and immediately after the accident, and that the highway patrolman investigating the death observed a dent in the right front fender of defendant's car and particles of flesh and blood imbedded therein.

3. **Automobiles § 113—** **manslaughter — evidence of intoxication — nonsuit**

     Evidence that an automobile operated by defendant fatally struck a pedestrian on a rural paved road at approximately 2:30 p.m. and speeded off without stopping, that prior to the accident defendant ran a stop sign approximately seven-tenths of a mile from the accident scene, and that at approximately one and one-half hours following the accident defendant appeared to be intoxicated and that defendant himself stated that he had not had a drink since 2:00 p.m., *held* insufficient to be submitted to the

jury on the issue of defendant's guilt of involuntary manslaughter, there being no evidence of how the car was being operated at the time of accident nor of intentional violation of a safety statute.

APPEAL by defendant from *Clark, J.,* 17 February 1969 Criminal Session, Superior Court of CHATHAM.

The defendant was charged with driving under the influence, manslaughter, and hit-and-run. Upon a plea of not guilty to each of these charges, trial was held. Defendant was found guilty of the charges of manslaughter and hit-and-run. To the charge of driving under the influence a judgment as of nonsuit was entered.

On 1 September 1968 at approximately 2:20 p.m., Kemp Page, who was 75 years of age, was walking north on the west shoulder of State Road #1008, also known as "Farrington Road". Paul Farrington, Jr. was standing in front of his house and observed Kemp Page as he was walking along the road. As Paul Farrington, Jr. was getting into his car, he heard a "thug" sound and immediately turned and saw Kemp Page's hat falling beside a black 1959 Chevrolet. The car did not stop .or slow down but increased its speed. Paul Farrington, Jr. started toward the highway and his wife called to him and stated that she had called an ambulance. He then turned and ran to his car and began to chase the 1959 Chevrolet. He was unsuccessful in his efforts and returned to his home. Upon arriving at his home he observed Kemp Page lying in a ditch on the west side of State Road #1008.

Trooper T. T. Jeffries, with the State Highway Patrol, arrived at the scene of the accident at approximately 2:35 p.m. and found that Kemp Page was dead. Kemp Page's body was situated eight feet from the edge of the pavement behind a mail box.

The accident occurred approximately seven-tenths of a mile south of the Lystra Church Road which dead ends into State Road #1008 from the west; and approximately six-tenths of a mile north of Martha Chapel Road which is a short road, approximately two and one-half miles long, connecting State Road #1008 and N.C. 751. N.C. 751 is east of State Road #1008 and runs parallel thereto.

While at the scene of the accident Jeffries had a conversation with Paul Farrington, Jr. and Eddie Burnette, and, as a result of this conversation, he began looking for a black 1959 Chevrolet. He went to the defendant's residence, apparently because of information received from Eddie Burnette, and discovered that the defendant was not at home. At approximately 4:00 p.m. Jeffries found the defendant in the yard of Paul Farrington, Sr., who lives approx-

imately 100 yards from where the accident occurred. At this time Jeffries observed that the defendant appeared to be under the influence of alcohol. Jeffries also examined a 1959 black Chevrolet which was at the residence of Paul Farrington, Sr. and which belonged to the defendant and observed that the right front fender was damaged just above the headlights. He also observed two other State Troopers remove particles of flesh from the fender of the car; and he observed that fine particles of clothing fiber were embedded in the paint in the immediate area of the damage to the defendant's vehicle. Defendant was informed of his constitutional rights and placed under arrest.

From concurrent sentences of imprisonment for a period of 5 to 7 years and 4 to 5 years on the charges of involuntary manslaughter and hit-and-run, respectively, the defendant appealed.

*Attorney General Robert Morgan by Deputy Attorney General Harrison Lewis and Staff Attorney James E. Magner for the State.*

*Robert L. Gunn for defendant appellant.*

MORRIS, J.

**[1]**     Defendant argues that the trial judge committed error in allowing the State's witnesses Jeffries and Russell to testify that they observed particles of flesh and blood on the right fender of the defendant's automobile. He has cited no authority for this argument. We think this argument is without merit. One need not be an expert to recognize particles of flesh and blood. The witnesses did not state that this matter came from the body of Kemp Page. Defendant argues that this testimony was a conclusion and, therefore, not admissible. Perhaps it was possible for the witnesses to describe the matter they found on the defendant's automobile without using the words flesh and blood, however, it would not have been practicable to do so. The witnesses were testifying as to physical matters within their own knowledge.

"Even when it might be *possible* to describe the facts in detail, it may still be *impracticable* to do so because of the limitations of customary speech, or the relative unimportance of the subject testified about, or the difficulty of analyzing the thought processes by which the witness reaches his conclusion, or because the inference drawn is such a natural and well-understood one that it would be a waste of time for him to elaborate the facts, or perhaps for some other reason.

It is neither possible nor desirable to lay down a hard and fast rule to cover the infinite variety of situations that may arise, but the admissibility of opinion evidence under the circumstances suggested above is thoroughly established. The idea is variously expressed by saying that 'instantaneous conclusions of the mind,' or 'natural and instinctive inferences,' or the 'evidence of common observers testifying to the results of their observation' are admissible, or by characterizing the witness's statement as a 'shorthand statement of the fact' or as 'the statement of a physical fact rather than the expression of a theoretical opinion.' " Stansbury, N.C. Evidence 2d, § 125.

This assignment of error is overruled.

Defendant has excepted to the failure of the trial judge to grant his motions for judgment as of nonsuit to the charges of involuntary manslaughter and hit-and-run; and to the signing of the judgment for each of these charges. These exceptions are brought forward in his assignments of error.

### Case #68CR279 — Hit-and-Run

G.S. 20-166 provides that "The driver of any vehicle involved in an accident or collision resulting in injury or death to any person shall immediately stop such vehicle at the scene of such accident or collision, and any person violating this provision shall upon conviction be punished as provided in § 20-182."

[2]    The evidence, taken in the light most favorable to the State, tends to show that the defendant was seen by Connie Kerns between 2:10 p.m. and 2:30 p.m. on the day of this accident driving a black Chevrolet and turning onto State Road #1008 and heading in a southerly direction. Connie Kerns stated that she observed the defendant turn from Lystra Church Road onto State Road #1008; that he did not stop at the stop sign; and that he pulled out into the wrong lane of the road and pulled back into his lane. He was traveling south. Lystra Church Road is approximately seven-tenths of a mile north of where the accident occurred.

Paul Farrington, Jr. testified that at approximately 2:20 p.m. he observed Kemp Page walking on the west side of State Road #1008 in a northerly direction; that he had turned to get into his car when he heard a "thug" sound; that after hearing this sound he turned and saw Kemp Page's hat fall beside a black 1959 Chevrolet; and that this car did not stop, but it gained speed as it left the scene of the accident.

Eddie Burnette testified that he was at his mother's home, which is located approximately three-fourths of a mile from State Road #1008, on the Martha Chapel Road, on the day of this accident; that at approximately 2:30 p.m. he saw the defendant pass his mother's home traveling toward the east driving a black Chevrolet at a speed of 75 miles per hour; and that a piece of dark cloth was hanging from the right fender of his automobile. Trooper Jeffries testified that a piece of material was missing from the deceased's coat. Burnette testified that he observed the car for approximately one-half mile.

Clay Scott testified that on the day of this accident at approximately 2:30 he was traveling east on the Martha Chapel Road and about to turn onto N.C. 751 when he observed a car come up behind him; that he pulled to the right to make his turn and the car behind him made a left turn traveling 25 to 30 miles per hour without stopping at the intersection; and that as the car came up beside him he recognized the person driving the car as being the defendant and that he was driving a 1959 or 1960 dark Chevrolet. Scott testified that he had known the defendant 30 to 35 years.

Trooper Robert Russell, with the State Highway Patrol, testified that he observed the defendant and his car in the yard of Paul Farrington, Sr. following the accident; that the defendant smelled of alcohol and that he staggered when he walked. Russell stated that the right front of the defendant's car was dented in and that there were particles of flesh and blood in this area.

We think this evidence taken in the light most favorable to the State as we are bound to do, 2 Strong N.C. Index 2d, § 106, was sufficient for submission to the jury. The motion for judgment as of nonsuit as to Case #68CR279 was properly denied.

### Case #68CR278 — *Involuntary Manslaughter*

In *State v. Massey*, 271 N.C. 555, 157 S.E. 2d 150, it is said:

" 'The common-law definition of involuntary manslaughter includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act done in a culpably negligent manner, and from the negligent failure to perform a legal duty.' *State v. Stansell*, 203 N.C. 69, 71, 164 S.E. 580, 581. In *State v. Cope*, 204 N.C. 28, 167 S.E. 456, Stacy C.J., laid down the criteria for determining criminal responsibility in automobile-accident cases. Criminal negligence is something more than actionable negligence in the law of torts; it is such recklessness, 'proximately resulting in injury or death, as

imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.' *Id.* at 30, 167 S.E. at 458. Under this definition '[a]n intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence. . . . But an unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility.' "

**[3]** Governed by these principles, we do not think the evidence was sufficient to submit to the jury the issue of involuntary manslaughter. Taken in the light most favorable to the State, the evidence shows that the defendant ran a stop sign approximately seven-tenths of a mile from where the accident occurred. There was no evidence of speed at this point. Paul Farrington, Jr. testified that he saw a black Chevrolet just after Kemp Page was struck and that the car increased its speed instead of stopping; however, there is no evidence of how the car was being operated at the time of the accident, nor is there any evidence of an intentional violation of a safety statute. There is evidence that approximately an hour and 30 minutes following the accident the defendant appeared to be intoxicated, and there is evidence that the defendant stated that he had not had a drink since 2:00 p.m. Assuming, *arguendo,* that this inculpatory statement made by the defendant takes this case out of the rule set forth in *State v. Reddish,* 269 N.C. 246, 152 S.E. 2d 89, we do not think the evidence establishes that the intoxication of the defendant was the proximate cause of the death of Kemp Page. *State v. Tingen,* 247 N.C. 384, 100 S.E. 2d 874. This assignment of error is sustained.

The conviction for hit-and-run is affirmed. The conviction for involuntary manslaughter is reversed. ·

CAMPBELL and BROCK, JJ., concur.