STATE OF NORTH CAROLINA v. GAYLE POOLE

No. 7915SC555

(Filed 18 December 1979)

1. **Criminal Law § 76.4 — confession — voir dire hearing — incompetent evidence — absence of prejudice**

   Defendant was not prejudiced when, during a hearing on a motion to suppress defendant's in-custody statement, an officer testified that he asked defendant if what happened to decedent bothered her and that defendant replied that she did not worry about things like that, since such testimony was not used by the trial judge in his findings and conclusions as to the voluntariness of defendant's statement.

2. **Criminal Law § 75 — failure to permit defendant to visit family or friends — admissibility of confession**

   Defendant's confession was not rendered inadmissible because she was not permitted to visit with her parents or friends who were at the police station where defendant did not request that she be allowed to visit with her family or friends.

3. **Criminal Law § 75.3 — confession — effect of statement by defendant's boyfriend**

   Defendant's confession was not rendered inadmissible because her boyfriend, in the presence of law officers, urged her to tell the truth and told her that the two of them would be together and everything would be all right.

4. **Criminal Law § 75.11 — confession — sixteen-year-old defendant**

   The evidence supported the trial court's determination that the confession of a sixteen-year-old girl was made voluntarily and understandingly where her rights were explained to her and she indicated an adequate understanding of them; she was given the opportunity to have counsel provided for her by the State; she could read and write and had progressed to the seventh grade; she was given food and offered water and restroom facilities; the somewhat lengthy period of questioning was broken by the meal; and although defendant

contends she was mentally and physically exhausted, she told her story twice with little variance.

**5. Criminal Law § 74— reading transcript of tape recording of confession**

The trial court did not err in permitting a witness to read a typewritten transcript of a tape recording of defendant's confession, although the transcript was not signed by defendant, where the witness testified that he was present when the confession was recorded and that he compared the transcript with the tape recording and that the same questions and answers appeared on both.

**6. Homicide §§ 28.8, 30.3— refusal to instruct on involuntary manslaughter or accident or misadventure**

The trial court in a murder prosecution did not err in refusing to instruct on involuntary manslaughter or death by accident or misadventure where the evidence tended to show that defendant beat the victim on the head with a stick, defendant and her boyfriend then robbed the victim and placed him in a stream while he was unconscious, and he died of drowning, since the evidence showed that the victim's death resulted from unlawful acts amounting to felonies done intentionally with malice.

APPEAL by defendant from *McLelland, Judge,* and *Martin, Judge.* Judgment entered 14 March 1979 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 25 October 1979.

Defendant, a sixteen-year old girl, was tried under a bill of indictment for the murder of Horace Mitchell Payne on 28 May 1977, and convicted of voluntary manslaughter. Her boyfriend, Tommy White, a twenty-three year old man, was likewise indicted for the same crime, but the trial of the two parties was severed.

Defendant Poole had been going with her boyfriend, White, for over a year prior to the death of Payne. She and White had stolen a truck and gone to a campsite on Payne's land about a week before Payne's death and remained there until after Payne's death.

The defendant was arrested 23 August 1978 between 4:30 and 5:00 p.m. in Orange County. Her parents, or the parents of her boyfriend, were at the jail, but defendant did not see them during the evening.

At approximately 10:00 p.m. the defendant observed Tommy White in the headquarters of the Orange County Sheriff's Department along with two other persons later identified as officials of

the Alamance County Sheriff's Department. At that time, White, in the presence of the two members of the Alamance Sheriff's Department, urged the defendant to tell the truth and they would be together and for her not to worry (later explained to mean not in prison but after the case was finally over).

Later during the evening, the defendant was taken by the two Alamance Sheriff's Department members to another room where she was read her *Miranda* rights, which she waived.

The defendant advised the deputies that she had not eaten, and soft drinks and food were ordered for the three of them. After the meal, the defendant was interrogated by the deputies, one of whom testified that prior to taping the defendant's statement, they "ran through it once."

Subsequently, the defendant was indicted for murder in the first degree, and an attorney was appointed for her defense. A motion to suppress the defendant's statement, supported by the defendant's affidavit, was considered by the trial judge prior to trial.

Defendant by affidavit used in the motion alleged that she was financially unable to employ counsel; that while in a detention cell she observed Tommy White with whom she had a close relationship prior to her arrest, and two other persons later identified as officials in the Alamance County Sheriff's Department; that Tommy White induced her to make statements to such members of the sheriff's department regarding the matters for which she is charged herein; that she had not eaten anything from the time of her arrest until read her *Miranda* rights; that she was mentally and physically exhausted, hungry and confused and did not voluntarily, understandingly or intelligently waive advice of counsel or representation of counsel in connection with interrogation, and that such statements made by the defendant during interrogation were not voluntarily made.

Thereafter, the two officers testified concerning facts occurring prior to and during the interrogation, and the court further interrogated the defendant as follows:

COURT: Miss Poole, did Mr. Overman tell you that you had a right to be silent, to have a lawyer, and so on?

A. Yes, he did.

COURT: Did you understand that you had such a right and did you tell him you understood that?

A. Yes, I told him I understood.

COURT: DId you understand it?

A. No, I didn't.

COURT: How was it you told him you understood when you didn't?

A. Well, you know, I understood, you know, what he was reading, but I didn't, you know, fully understand what I could be getting myself into by talking to him.

COURT: But you did understand that you did not have to talk to him, did you not?

A. Yes.

COURT: And you did sign this document that was presented here?

A. Yes, I did.

From the evidence before the court at that time, the court entered the following Order on Motion to Suppress:

. . . I find from the evidence, giving due consideration to the arguments of counsel, that the Defendant, Gayle Poole, was taken into custody to the Sheriff's Office in Orange County on the afternoon of August 23, 1978, between 5:30 and 6:00 o'clock p.m.; that the Defendant was then sixteen and one-half years of age, had a seventh grade education, was able to read and write, was mature and alert; that Alamance County Sheriff's Officers Overman and Qualls at Hillsborough began an interview with Defendant at about 10:00 o'clock p.m.; that neither she nor the officers had eaten at that time, and food was ordered for all; that while they waited for the food the Defendant was advised of her Miranda rights as the same are set out in the Orange County Sheriff's Department form admitted into evidence as State's Exhibit 1; that she told the officers that she understood the rights read to her, did not want an attorney present, and was willing to answer questions; that she signed the waiver of these rights also set out on that form and responded to questions put to her.

From these findings, I conclude that while the Defendant might have lacked a full understanding of the legal niceties of her actions she did not lack capacity to understand and did understand her Miranda rights; that the interview was conducted under circumstances in no sense coercive; that she waived her rights to be represented at the interview by counsel and to remain silent, freely and intelligently; that the statement given by the Defendant was freely, understandingly, and voluntarily given.

The defendant had filed an objection to the joinder of this case with that of Tommy White for trial, and the court allowed a severance of the cases on its own motion.

At the trial of the case the State offered evidence including a transcribed copy of the tape containing the interrogatories and answers made by the defendant which had been compared with the original tape and found to be the same. Defendant objected to the introduction of the confession at the time of the trial.

Briefly, the facts in the statement showed that the defendant gave the confession after being advised of her *Miranda* rights; that she and Tommy White were at a campsite on Mitchell Payne's farm and saw Payne, the deceased; that White and Payne were drinking beer; that Tommy got scared and wanted to shoot Payne, and defendant told him not to; that Tommy tried to smother Payne with a pillow and ended up choking him; that the defendant took a flashlight from Mitchell Payne and then hit him on the forehead with a stick the size of a tobacco stick; that the defendant "guessed" Mitchell Payne died; that she could not remember if it were Tommy alone or she and Tommy who put Payne in a creek after robbing him of his wallet and car keys; that she could not hear Payne breathing before he was put in the creek, but she could hear a little heartbeat; that she did not intend to kill Payne while hitting him with the stick; that she was trying to help Tommy kill Payne but was scared to hit him hard. The defendant and Tommy then burned the evidence at the campsite and left in Payne's car.

During the hearing on the Motion to Suppress, one of the officers testified that after the confession was taped he asked the defendant if it bothered her as to what happened to Mitchell

Payne, Defendant testified that she did not worry about things like that. Defendant objected to such testimony as prejudicial.

From a verdict of guilty of voluntary manslaughter, the defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Thomas H. Davis Jr., for the State.*

*Paul H. Ridge, for defendant appellant.*

HILL, Judge.

The record on appeal is voluminous and contains numerous exceptions, but the most serious deals with the statement of the defendant to the officers on the night of her arrest.

[1] Did the court err in overruling the objection of the defendant to improper and irrelevant evidence as to comments of the defendant not involved in her statement which was the subject of a Motion to Suppress, but which evidence was allowed to be injected into the hearing and which defendant contends was prejudicial? Defendant contends that the only reason she was asked by the officers if it bothered her as to what happened to Mitchell Payne was to excite prejudice or sympathy, and that she was entitled to a new trial. We do not agree. This evidence was not used by the trial judge in his findings of fact and conclusions of law as to the voluntariness of the confession given by the defendant. It was simply ignored.

Was the confession properly admitted into evidence? We hold that it was.

The burden of showing the voluntariness of the confession is on the State. *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970); *rev'd on other grounds*, 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290 (1971); *on remand*, 279 N.C. 388, 183 S.E. 2d 106 (1971). It is to be determined by a trial judge upon a *voir dire* in the absence of the jury. *State v. Haskins*, 278 N.C. 52, 178 S.E. 2d 610 (1971).

[2] The record reveals that defendant did not request that she be able to visit with her family or friends, and the record further shows that the officers conducting the interview did not ask

whether or not defendant wished to communicate with her family or friends. Absent such request, we find no error. *See State v. Curmon*, 295 N.C. 453, 245 S.E. 2d 503 (1978).

[3] The defendant contends that Tommy White was an *agent provocateur* of the Alamance County Sheriff's Department. White urged the defendant to tell the truth and told her that the two of them would be together and everything would be all right. This is no promise of any advantage that would tend to render defendant's confession involuntary. *See State v. Matthews*, 231 N.C. 617, 58 S.E. 2d 625 (1950); *cert. denied* 340 U.S. 838, 95 L.Ed. 615, 71 S.Ct. 24 (1950).

The defendant's youth and lack of high mentality, standing alone, and the somewhat lengthy period of interrogation do not necessarily render the statement involuntary. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975); *modified* 428 U.S. 908, 49 L.Ed. 2d 1213, 96 S.Ct. 3215 (1976).

[4] In this case defendant's rights were explained to her. She indicated an adequate understanding. The defendant was given the right to call in counsel—to be provided for her by the State. There was evidence that she could read and write and had progressed to the seventh grade and was a little more mature than the average sixteen year old. There is no evidence of physical abuse. She was given food and offered water and restroom facilities. The period of questioning was broken by the meal. Defendant contends she was tired and mentally and physically exhausted, but she appears to have told her story twice with little variance.

In determining whether a defendant's will was overborne in a particular case, the court must assess the totality of all of the surrounding circumstances. This was done before receipt of the confession into evidence. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed. 2d 854, 93 S.Ct. 2041 (1973). *See also State v. Silver, infra.*

We have examined the entire record and are of the opinion that there is evidence to substantiate the finding by the presiding judge that the confession was voluntarily and understandingly made. *State v. Silver*, 286 N.C. 709, 213 S.E. 2d 247 (1975).

[5] The defendant objected to a reading of a typed transcript of the confession made on tape on the night of arrest. State's witness testified that he was present throughout the course of questioning and that the tape recording of the questioning had been reduced to transcription; that he had compared the copy of the transcript and the tape, and the same questions and answers appeared both places.

Defendant contended that a witness should not be permitted to read from a written transcript unless the transcript itself is admissible as an exhibit. *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978). The trial judge ruled previously that the defendant's confession was freely, knowingly, and voluntarily made and admissible in trial, and the defendant's counsel admits that the transcription, absent a few minor typographical errors, was the same statement given and taped by police officers, which had been ruled admissible.

The facts in this case are distinguishable from *State v. Potter, supra*, and *State v. Walker*, 269 N.C. 135, 152 S.E. 2d 133 (1967). In those cases the transcripts were based upon what the officers *remembered hearing* at the time of interrogation. The memory of man is subject to error. The transcriptions in this case are made from the original tape. We see no error because they are not signed.

[6] Defendant further contends that the court erred by refusing to charge the jury on involuntary manslaughter or death by accident or misadventure. There was no evidence to support such instruction.

The State's evidence clearly supports the fact that the defendant and her boyfriend accomplice, Tommy White, placed the deceased in a creek in an unconscious state and that he died of drowning. Prior to placing the deceased in the water, the defendant had beaten the decedent maliciously on the head with a stick. The defendant and her boyfriend had robbed the deceased. Such evidence clearly shows that the death of the deceased was the result of unlawful acts amounting to felonies done intentionally with malice. Therefore, the trial court's refusal to charge the jury in involuntary manslaughter was completely proper.

Involuntary manslaughter is the unlawful killing of a human being, unintentionally and without malice, proximately resulting from the performance of an unlawful act not amounting to a felony, or resulting from some act done in an unlawful or culpable negligent manner, when fatal consequences were not improbable under all the facts existent at the time, or resulting from a culpably negligent omission to perform a legal duty. 6 Strong's N.C. Index 3d, Homicide, § 6.1, p. 537; *State v. Massey*, 271 N.C. 555, 157 S.E. 2d 150 (1967).

Any defense that the death of Payne was the result of an accident or misadventure must be predicated upon the absence of an unlawful purpose on the part of the defendant and the absence of culpable negligence. *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769, *cert. denied*, 368 U.S. 851, 7 L.Ed. 2d 49, 82 S.Ct. 85 (1961).

Likewise, there is ample evidence in this case to sustain a charge to the jury upon the doctrines of acting in concert and aiding and abetting. When two or more persons aid and abet each other in the commission of a crime, all being present, each is a principal and equally guilty regardless of any conspiracy or previous confederation or design, and regardless of which is the actual perpetrator. *State v. Terry*, 278 N.C. 284, 179 S.E. 2d 368 (1971); *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44 (1967). A defendant who enters into a common design for a criminal purpose is equally deemed by the law a party to every act done by others in the furtherance of such design. *State v. Lovelace*, 272 N.C. 496, 158 S.E. 2d 624 (1967).

Admittedly, the trial judge must instruct a jury to a lesser included offense of the crime charged when there is evidence from which the jury could find that the defendant committed the lesser offense. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976). There was no evidence present in this case which would support a verdict of involuntary manslaughter or death by accident or misadventure.

The defendant contends that the trial court erred in refusing to dismiss the charges against the defendant at the conclusion of the evidence for the State, and in refusing the defendant's motion to set aside the jury verdict. We hold the evidence to be sufficient in both instances to sustain the trial judge's rulings. Further, the defendant's sentence was within the limits permitted by

statute, and the trial judge did not err in rendering judgment and sentence set forth in the record.

In the trial of this case, we find

No error.

Judges VAUGHN and ERWIN concur.