STATE OF NORTH CAROLINA v. DWIGHT EARL TOOMER

No. 631A83

(Filed 5 June 1984)

1. **Criminal Law § 70— tape-recorded interview with witness—failure to lay proper foundation for admissibility—prejudicial error**

   The trial court erred in allowing into evidence a transcription of a detective's taped interview with a prosecution witness where the State failed to lay a proper foundation for its admissibility in that (1) the witness denied that his interview with the detective was taped and the detective was never asked whether he recorded the interview with the witness, or, if he did, whether the recorder was operational and functioning properly, (2) the witness did not testify that the transcript of the interview was accurate or authentic, and (3)

there was no proof as to who reduced the recording to transcription or that anyone compared the transcript with the tape. Defense counsel's comments that "it is a tape," and that "it is from the tape," did not suffice as a stipulation to all of the foundational requirements respecting the admission into evidence of a tape recording or a transcription thereof. Further, since defendant presented evidence of an alibi which was corroborated, the description of the victim's intruder differed substantially from the description of defendant, and there was no physical evidence which tended to connect defendant to the victim's apartment or to the crime, the taped interview in which a witness admitted receiving the stolen property from defendant and in which he stated that defendant told him of his involvement in the crime, was the most damaging evidence presented implicating defendant in the commission of the offenses charged, and therefore, the erroneous admission of this evidence constituted prejudicial error entitling defendant to a new trial. G.S. 15A-14.43(a).

2. **Criminal Law § 138— use of deadly weapon properly considered as aggravating factor**

The trial court properly aggravated defendant's first-degree burglary sentence with the fact that he was armed with or used a deadly weapon at the time of the breaking and entering even though evidence of the use of a deadly weapon was necessary to prove an essential element of the joinable crime of first-degree sexual offense. G.S. 15A-1340.4(a)(1)o and G.S. 15A-1340.4(a)(1)i.

APPEAL by defendant from *Barnette, Judge*, at the 8 August 1983 Criminal Session of DURHAM County Superior Court.

Defendant was charged in indictments, proper in form, with first-degree burglary, first-degree sexual offense and robbery with a firearm. He entered pleas of not guilty to each of the offenses charged.

At trial, the State offered evidence tending to show the following:

On 2 September 1982, Leslie Lehmann, a medical student at George Washington University in Washington, D.C., arrived in Durham to spend the weekend with her husband, who was a resident in internal medicine at Duke University. Ms. Lehmann's husband lived in an apartment on Douglas Street in Durham and she testified that she arrived at the residence between 8:00 and 8:30 p.m. Ms. Lehmann's husband was working at the hospital and was not expected home until after midnight.

When she arrived at the apartment, Ms. Lehmann locked the door and made several telephone calls, including one to her hus-

State v. Toomer

band to inform him of her arrival. Some time after 10:30 p.m., she went into the bedroom to read and quickly fell asleep, leaving the lights and the radio on.

Ms. Lehmann testified that she was later awakened by a black man who was kneeling on the bed whispering in her ear. When she awoke, she was lying face down on her bed and a cord was around her neck. The lights had been turned out in the bedroom.

The man, whom Ms. Lehmann later identified from a photographic lineup as defendant, asked her what time her husband was coming home. She responded that her husband would be home any minute and suggested that he leave. At that point, the intruder dragged her off the bed, pushed her to a kneeling position on the floor and threatened to rape her. She testified that he then struck her on the head with a hard object. Moments later, the man pulled Ms. Lehmann to a standing position, shoved her into a storage room in the apartment and closed the door. She removed the rope from her neck and hid it behind some boxes in the storage room. She then pushed the door open slightly and noticed that the lights were still on in the living room. When she opened the door farther, the intruder came into the utility room with a gun. He pointed the weapon at her and said, "We are going outside. We are going to go to the woods. Come on, or I will kill you."

When Ms. Lehmann refused to go to the woods, the man grabbed her by the shoulders and pushed her into the living room. She testified that he rubbed his hand between her legs and inserted his finger into her vagina. She was wearing a tampon. The man asked her if she was menstruating and she replied that she was. He then inquired if she had any money. She told him that she had four dollars and that he could have it. During this conversation, the intruder stood behind Ms. Lehmann. She remembered that there was silence for a few moments after she told him about the money and when she turned around he had gone. Ms. Lehmann then went next door to her neighbor's and telephoned the police.

When the police arrived, Ms. Lehmann returned to her apartment with them. She noticed that her pocketbook, which she had left lying on a table in the living room when she had first entered

the apartment that evening, was missing. The purse contained a make-up bag and a wallet in which Ms. Lehmann carried at least ten credit cards. The police also observed a butcher knife on the couch in the living room, which Ms. Lehmann testified was in the kitchen sink when she went to bed. An examination of her bedroom revealed spots of blood on the sheet. Finally, the police noticed that a curtain cord had been cut from the kitchen window.

Within hours of the incident, Ms. Lehmann described her assailant to police as a black man in his twenties with dark skin and high cheekbones. She stated to Durham Public Safety Officer A. E. Harris that the intruder was between five feet, ten inches and six feet, two inches in height, that he had no discernible facial hair and that he wore a short-sleeve shirt, dark pants and a cap with a visor. Defendant's evidence, however, revealed that he was only five feet, five inches tall and that he had facial hair in September, 1982.

Defendant presented evidence of an alibi. His former employer, Ione Watkins, testified that defendant worked for her at the Tip Top Fish House in Durham until 8 September 1982. She testified that on 2 September 1982, defendant worked at the restaurant until shortly after 2:00 p.m. She stated that he returned to work at 10:00 a.m. on Friday, 3 September. Ms. Watkins also testified that defendant had a mustache during the first week of September, 1982.

Defendant testified that after he left the restaurant on 2 September, he went to Teresa Johnson's house on Hopkins Street in Durham. He arrived at Ms. Johnson's around 4:00 p.m. and spent the night at her residence. Defendant stated that he did not leave Ms. Johnson's until the next morning when he returned to work at the Fish House. He maintained that he did not break into Ms. Lehmann's apartment and that he did not assault her.

Teresa Johnson testified in corroboration of defendant's alibi, recalling that defendant did not leave her home from the time of his arrival at 4:00 p.m. on 2 September until his departure for work the next morning.

Roderick Smith also testified for defendant. Smith recalled that on or about 16 September 1982, he discovered a blue tote bag in an alley adjacent to the Nearly New Shop in Durham. He

testified that he looked inside the tote bag and discovered credit cards belonging to Ms. Lehmann. Smith stated that he telephoned her and informed her that he had discovered her property. Ms. Lehmann handed the telephone to her husband, Dr. Longabough. Longabough arranged to meet Smith at the Pizza Hut on Erwin Road to recover the property. Detective A. E. Harris witnessed the meeting between Smith and Longabough and the exchange of the property. He thereafter arrested Smith for extortion and accessory after the fact to first-degree sexual offense, first-degree burglary and armed robbery. Smith specifically testified that he did not acquire Ms. Lehmann's property from defendant and denied telling Detective Harris that defendant had given him the tote bag and credit cards.

The State recalled Detective Harris as a witness in rebuttal. Harris testified that he interviewed Smith at the Detective Bureau after Smith's arrest. Over defendant's objection, the assistant district attorney read to the jury a transcribed portion of this interview, although Harris was never asked if he recorded the conversation with Smith. In essence, the transcription revealed that Smith had earlier stated to Detective Harris that he received the credit cards from defendant on 15 September 1982. The transcription further indicated that Smith saw defendant again at a later date and that defendant then admitted to Smith that he had broken into some lady's house, stolen her pocketbook and beaten her.

In surrebuttal, defendant denied giving the credit cards to Smith and denied telling him that he perpetrated the burglary, the sexual assault or the robbery.

The jury found defendant guilty of first-degree burglary, first-degree sexual offense and common law robbery. Defendant received sentences of life imprisonment on the convictions of first-degree burglary and first-degree sexual offense. These sentences were to run concurrently. Defendant also received a sentence of ten years for common law robbery.

Defendant appealed the life sentences directly to this Court pursuant to G.S. 7A-27(a). On 29 December 1983, we allowed defendant's motion to bypass the Court of Appeals on the common law robbery conviction pursuant to G.S. 7A-31(b).

*Rufus L. Edmisten, Attorney General, by John R. Corne, Assistant Attorney General, and Barbara P. Riley, Associate Attorney, for the State.*

*Adam Stein, Appellate Defender, by Lorinzo L. Joyner, Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

[1]  Defendant first contends the trial court erred by permitting the district attorney to read into evidence a transcription of Detective Harris' taped interview with Roderick Smith. Defendant objects to this evidence on the ground that the State failed to lay a proper foundation for its admissibility.

In order to insure proper authentication of a tape recording, this Court held in *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971), that the following requirements must be met before a tape recorded statement may be admitted into evidence:

> (1) that the recorded testimony was legally obtained and otherwise competent; (2) that the mechanical device was capable of recording testimony and that it was operating properly at the time the statement was recorded; (3) that the operator was competent and operated the machine properly; (4) the identity of the recorded voices; (5) the accuracy and authenticity of the recording; (6) that defendant's entire statement was recorded and no changes, additions, or deletions have since been made; and (7) the custody and manner in which the recording has been preserved since it was made.

*Id.* at 17, 181 S.E. 2d at 571. *See also, State v. Griffin,* 308 N.C. 303, 302 S.E. 2d 447 (1983); *State v. Detter,* 298 N.C. 604, 260 S.E. 2d 567 (1979).

Furthermore, when a *transcription* of a tape recorded interview or conversation is sought to be admitted into evidence, additional foundational proof is required. A witness who was present when the interview was conducted must testify that it was recorded and later reduced to transcription. It must also be shown that the transcript was compared with the tape recording and that the transcript is an accurate representation of the conversation. *See State v. Poole,* 44 N.C. App. 242, 261 S.E. 2d 10 (1979), *disc. rev. denied,* 299 N.C. 739, 267 S.E. 2d 667 (1980).

It is clear that none of these foundational requirements were established in this case. Smith denied that his interview with Harris was taped and Detective Harris was never asked whether he recorded the interview with Smith or, if he did, whether the recorder was operational and functioning properly. Nor did Harris testify that the transcript of the interview was accurate or authentic. There is no proof as to who reduced the recording to transcription or that anyone compared the transcript with the tape.

The State submits, however, that defense counsel stipulated the transcription was from a tape recording of Harris' interview with Roderick Smith. This stipulation, they argue, obviated the necessity of laying a foundation for this evidence in accordance with the *Lynch* and *Poole* requirements.

The State bases its contention that defense counsel stipulated to the authenticity and accuracy of the transcription upon the following exchange which took place when the State offered the transcript into evidence:

Q. If Your Honor please, I would request to read into the record the following conversation that occurred between Detective Harris and the witness Mr. Roderick Quincy Smith. I believe we have a stipulation from counsel that this is from a tape recording that Mr. Harris made.

Mr. Vann: I stipulate it is a tape but object to his testimony.

Court: Objection is overruled, [Exception No. 1], but you do stipulate it is from the tape?

Mr. Vann: Yes.

"While a stipulation need not follow any particular form, its terms must be *definite and certain* in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them." *State v. Powell*, 254 N.C. 231, 234, 118 S.E. 2d 617, 619 (1961), quoting, 83 C.J.S. *Stipulations* § 24b(3) (emphasis added).

We are of the opinion that defense counsel's comments that "it is a tape," and that "it is from the tape," do not suffice as a

stipulation to all of the foundational requirements respecting the admission into evidence of a tape recording or transcription thereof. Mr. Vann's words are ambiguous at best and certainly do not make "definite and certain" the terms of the stipulation.

In reaching the conclusion that defense counsel did not stipulate to the authenticity and accuracy of the transcript, we are guided by this Court's decision in *State v. Powell, supra.* In *Powell,* the defendant was charged with driving under the influence of intoxicating liquors, second offense. The solicitor offered into evidence a record of the Recorder's Court of Carteret County. Counsel for defendant stipulated that it was an official record of that court. The solicitor then said: "The record shows the defendant was charged with driving drunk, was found guilty as charged, September 10, 1958." 254 N.C. at 233, 118 S.E. 2d at 619. Defendant made no response to the prosecutor's accusation. Our Court noted that, "[t]hereafter, no evidence was offered by the State or defendant as to whether or not defendant was the person referred to in the record, or whether or not defendant had been previously convicted on a charge of driving under the influence." *Id.* at 233-34, 118 S.E. 2d at 619.

The *Powell* Court held that notwithstanding the apparent assent of the defendant, the record did not show that the terms of the stipulation were "definite and certain." In support of this conclusion, Judge Moore reasoned:

Defendant stipulated that the court minutes offered in evidence were an official record of the Recorder's Court of Carteret County. When the solicitor stated the contents of the record and purported to apply them to defendant, defendant remained silent. The solicitor did not state that defendant admitted the truth of the matters contained in the Recorder's Court record or that defendant stipulated that he was the person referred to in the record. The purported stipulation was not definite and certain on this phase. . . . The court inadvertently fell into error by not insisting upon a *full, complete, definite and solemn* admission and stipulation.

*Id.* at 234-35, 118 S.E. 2d at 620 (emphasis added).

By the same reasoning, defense counsel here merely stipulated that the transcription was from "a tape recording that Mr.

Harris made." He did not admit to the truth of the matters contained therein or even that the transcript accurately reflected the conversation on the tape. Thus, his remarks were insufficiently definite and certain to permit the State to dispense with laying the foundation for the admission of this type of evidence.

We therefore hold that the trial judge erred in permitting the district attorney to read the transcription of the purportedly tape recorded conversation to the jury in the absence of proper authentication as required by *Lynch* and *Poole*.

We next consider whether the erroneous admission into evidence of the transcript without proper authentication constitutes reversible error.

Defendant presented evidence of an alibi which was corroborated by the testimony of Teresa Johnson. The victim, Ms. Lehmann, described the intruder to police shortly after the incident as a black man in his early twenties, between five feet, ten inches and six feet, two inches tall and with no discernible facial hair. Defendant offered unrefuted evidence at trial, however, that he was five feet, five inches tall and that he had a mustache on 2 September 1982. There was no physical evidence, such as fingerprints, hair samples or clothing fibers, which tended to connect defendant to the Lehmann apartment or to the crimes committed therein. Thus, the taped interview in which Smith admitted receiving the stolen property from defendant and in which he stated that defendant told him of his involvement in the crime, was the most damaging evidence presented implicating defendant in the commission of the offenses charged.

We therefore hold that under the facts of this case, the erroneous admission of this evidence constitutes prejudicial error entitling defendant to a new trial. We are convinced that there is a reasonable possibility that had this error not been committed, the jury would have reached a different result. G.S. 15A-1443(a).

[2] Although not necessary to decision in this case since defendant will receive a new trial, judicial economy dictates that we consider defendant's third assignment of error relating to the sentencing phase of the trial. By this assignment of error, defendant contends that the trial judge erred in aggravating his first-degree burglary sentence with the fact that he was armed with or

used a deadly weapon at the time of the breaking and entering, since evidence of the use of a deadly weapon was necessary to prove an essential element of the joinable crime of first-degree sexual offense.

General Statute 15A-1340.4(a)(1) lists, *inter alia*, the following aggravating factor:

> o. The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement. Such convictions include those occurring in North Carolina courts and courts of other states, the District of Columbia, and the United States, provided that any crime for which the defendant was convicted in a jurisdiction other than North Carolina would have been a crime if committed in this State. Such prior convictions do not include any crime that is joinable, under G.S. Chapter 15A, with the crime or crimes for which the defendant is currently being sentenced.

Defendant maintains that the trial judge violated this statutory provision when he found as an aggravating factor that defendant was armed with a deadly weapon when he committed first-degree burglary.

We are of the opinion that defendant's reliance on this statutory section is misplaced.

General Statute 15A-1340.4(a)(1)o permits evidence of previous convictions to show a past history of criminal conduct. The proscription in the statute against considering joinable crimes in aggravation of defendant's punishment under this particular section is to insure the consideration of only *past* criminal conduct. The trial judge could not, then, find as an aggravating factor under this section the fact that defendant contemporaneously committed another crime. *See State v. Lattimore*, 310 N.C. 295, 311 S.E. 2d 876 (1984). This proscription is consistent with G.S. 15A-926 which, in effect, provides as a procedural matter that joinable offenses must be tried together absent some reason for separate trial.

In further support of our conclusion that defendant's contention is without merit, we note that in *State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983), this Court impliedly approved of a

similar finding in aggravation under circumstances factually iden-
tical to those presented in instant case.

The defendant in *Chatman* was convicted of first-degree rape,
first-degree sexual offense and first-degree burglary. In imposing
the maximum sentence of fifty years for first-degree burglary, the
trial judge found as a factor in aggravation of defendant's punish-
ment that he "was armed with or used a deadly weapon at the
time of the crime." The evidence revealed that the deadly weapon
possessed by the defendant when he broke into the victim's home
was a knife which he later used to threaten the victim and to
force her to engage in sexual intercourse with him. The threat-
ening use of the knife was thus one of the elements in support of
defendant's convictions of first-degree rape and first-degree sex-
ual offense.

The defendant contended on appeal that because the knife
was used in the rape but was not actually used in the burglary,
the trial court erred in finding in aggravation of defendant's
burglary sentence that he was armed with a deadly weapon when
he entered the victim's home. Justice Meyer rejected defendant's
contention, finding that the challenged aggravating factor was
fully supported by the evidence.

> Defendant was armed with a deadly weapon, the knife, *at the
> time he committed the burglary offense.* Judge Albright
> properly found as a factor in aggravation that defendant was
> armed at the time of the crime.

308 N.C. at 179-80, 301 S.E. 2d at 77. (Emphasis in original.)

Conceding that the precise question raised by defendant in
this case was not decided in *Chatman,* we nevertheless are of the
opinion that the above-quoted language from that case and our
earlier discussion of the inapplicability of G.S. 15A-1340.4(a)(1)o to
the facts here presented, is sufficient to dispose of defendant's
argument that the trial court erred in finding in aggravation of
his punishment for burglary that he was armed with a deadly
weapon at the time of the crime. General Statute 15A-1340.4(a)(1)i
specifically provides as an aggravating factor that "the defendant
was armed with or used a deadly weapon at the time of the
crime" and the evidence in this case unquestionably reveals that
defendant was armed with a gun when he entered the victim's

kitchen window. The possession of a weapon is not an essential element of first-degree burglary and therefore the challenged aggravating factor does not violate the prohibition of G.S. 15A-1340.4(a)(1) that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation, . . . ."

We therefore hold that the trial judge appropriately considered in aggravation of defendant's punishment for burglary the fact that he was armed with or used a deadly weapon at the time of the crime.

For the reasons above stated, there must be a

New trial.