STATE OF NORTH CAROLINA v. JAMES TERRY OLIVER

No. 368A92

(Filed 10 September 1993)

1. **Criminal Law § 775 (NCI4th) — murder — voluntary intoxication — instruction refused — no error**

There was no error in a first-degree murder prosecution in the court's failure to give defendant's requested instruction on voluntary intoxication where defendant presented no evidence relating to his degree of intoxication and none of the State's witnesses specifically testified that defendant was intoxicated. This evidence is insufficient under *State v. Mash*, 323 N.C. 339, to require the trial court to instruct the jury on voluntary intoxication even when viewed in the light most favorable to defendant.

**Am Jur 2d, Trial § 743.**

2. **Homicide § 556 (NCI4th) — first-degree murder — attempted armed robbery — failure to instruct on second-degree murder as lesser offense — no error**

The trial court did not err in a prosecution for first-degree murder and attempted armed robbery by not instructing the jury on the lesser-included offense of second-degree murder. All the evidence in this case indicates that the murder was committed during an attempted armed robbery and, by statutory definition, a murder committed during the perpetration of an attempted armed robbery is first-degree murder. The jury returned a verdict that defendant was guilty of first-degree murder under the felony-murder rule and no evidence in the record warranted submission of an instruction on second-degree murder. N.C.G.S. § 14-17 (Supp. 1992).

**Am Jur 2d, Homicide § 526.**

3. **Assault and Battery § 116 (NCI4th) — assault with a deadly weapon with intent to kill inflicting serious injury — failure to instruct on lesser offense — no error**

The trial court did not err in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury by not instructing on the lesser-included offense of assault with a deadly weapon inflicting serious injury where the evidence of intoxication was insufficient to negate the necessary intent for assault with a deadly weapon with intent to kill inflicting serious injury and all the evidence tended to show a shooting with a deadly weapon with the intent to kill.

**Am Jur 2d, Trial §§ 876 et seq.**

4. **Burglary and Unlawful Breakings § 70 (NCI4th) — constructive breaking — evidence sufficient**

There was sufficient evidence of burglary where defendant contended that the victim consented to defendant's entry into the apartment but testimony from the State's witnesses disclosed that defendant knocked on the door of the apartment while holding a loaded gun in his hand, gave his name when asked, entered when the door was opened, ordered Luis Ortega to "give it up" once inside, and then shot and killed Ortega. This evidence supports constructive breaking in that defend-

ant induced the occupant to open the door by knocking at the door under the pretense of business.

**Am Jur 2d, Burglary § 50.**

5. **Robbery § 4.4 (NCI3d) — attempted armed robbery — illegal drugs and money from drug sales — evidence sufficient**

There was sufficient evidence of attempted armed robbery where defendant and his accomplices went to the residence of Sheila Twiggs to rob Mexicans of money and drugs. Although defendant contended that illegal drugs and money from the sale of illegal drugs are not protected property and that the attempt to steal such property is not a crime, contraband may be the subject of armed robbery. The gravamen of the offense is the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons in the attempt to perpetrate the crime of robbery.

**Am Jur 2d, Robbery §§ 5, 16.**

6. **Evidence and Witnesses § 907 (NCI4th) — officer's conclusion — based on statement of unavailable witness — not hearsay**

Testimony from an officer that a witness who could not be located could not add anything was not hearsay in that the testimony did not repeat, summarize, or intimate any oral or written assertions made during the investigatory interview and merely contained the officer's conclusion based on his interview.

**Am Jur 2d, Evidence § 498.**

7. **Burglary and Unlawful Breakings § 99 (NCI4th) — burglary — instructions — consent**

There was no error in a prosecution for murder and burglary in the court's reinstructions on breaking and entering where defendant contended that the state failed to prove that the victim, as an occupant of the apartment, lacked authority to consent to entry by defendant. The circumstances under which defendant, armed with a pistol, gained entry at 2:30 in the morning were sufficient to negate any issue of whether the victim was authorized to or granted consent to defendant's entry.

**Am Jur 2d, Burglary § 50.**

8. **Burglary and Unlawful Breakings § 165 (NCI4th) — burglary — evidence sufficient — instruction on lesser-included offense not given**

   The trial court did not err in a first-degree burglary prosecution by failing to submit the lesser-included offense of felonious breaking or entering where all of the evidence showed a "constructive" breaking and entering during the nighttime into an apartment with people sleeping inside with the intent "to rob the Mexicans."

   **Am Jur 2d, Burglary § 69.**

9. **Criminal Law § 1158 (NCI4th) — aggravating factors — first-degree burglary — possession of weapon — not used for entry**

   The trial court did not err when sentencing defendant for first-degree burglary by using the fact that defendant was armed with a deadly weapon at the time of the breaking and entering to aggravate the sentence. The North Carolina Supreme Court has consistently held that possession of a deadly weapon may be used to aggravate the sentence for a burglary conviction when the use of the same weapon constitutes a separate offense. Defendant here possessed but did not use a gun at the time he tricked the occupants into opening the apartment door; once inside, defendant used the gun to attempt to steal money and drugs and then to shoot and kill Luis Ortega. These subsequent actions formed the basis for attempted armed robbery and murder charges.

   **Am Jur 2d, Criminal Law §§ 598, 599.**

   **Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.**

10. **Criminal Law § 1193 (NCI4th) — sentencing — prior convictions — prior conviction on appeal**

    The trial court did not err when sentencing defendant for first-degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury by finding the aggravating factor of prior convictions where one of those convictions was on appeal. Having failed to object to the use of his previous conviction on the ground that it was on appeal and having stipulated to the validity of his prior conviction, defendant has waived his right to challenge on appeal the

use of the conviction as an aggravating factor. Furthermore, this conviction was only one of several convictions punishable by more than sixty days confinement.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by Greeson, J., at the 23 March 1992 Criminal Session of Superior Court, Forsyth County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals for this Court to review judgments entered on the other felony convictions was allowed by the Supreme Court on 22 October 1992. Heard in the Supreme Court 14 April 1993.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

PARKER, Justice.

Defendant was charged in indictments, proper in form, with first-degree murder, first-degree burglary, assault with a deadly weapon with intent to kill inflicting serious injury, and attempted armed robbery. The case was tried capitally on the theory of premeditated and deliberated murder and under the felony-murder rule. Defendant was convicted of first-degree murder under the felony-murder rule only and was found guilty as charged on the remaining offenses. Following a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended life imprisonment. Upon this recommendation defendant was sentenced to life imprisonment for the murder conviction and was also sentenced to consecutive terms of twenty years for the aggravated assault conviction and fifty years for the burglary conviction. The trial court found that the attempted robbery charge merged with the first-degree murder conviction and arrested judgment thereon. For the reasons discussed herein, we conclude that defendant's trial was free from prejudicial error.

STATE v. OLIVER

[334 N.C. 513 (1993)]

The State presented evidence at trial tending to show that in late August of 1991, Sheila Twiggs resided in Apartment #53 at 920 Delmonte Court in Winston-Salem, North Carolina, with her two small children, Nikita and Thomas. The victims, Luis "Mexico" Ortega and Robert Abreu, were staying with her temporarily. On the evening of 28 August 1991, Ms. Twiggs and Ortega ran into Robert Abreu with a friend, Cordie Armstrong, at a bar named Baby Shamu. Ortega, Abreu, and Ms. Armstrong left Baby Shamu at approximately 1:00 a.m. (29 August 1991) and returned to Ms. Twiggs' apartment. When they arrived, Ms. Twiggs, who had left the bar earlier with Michael Williams, was sitting in a parked car not far from the front door of the apartment. Ms. Armstrong fell asleep in the living room along with Ms. Twiggs' daughter, Nikita.

Ms. Armstrong was awakened later by gunshots. She sat up and saw defendant, standing inside the living room approximately seven feet away from her, repeatedly firing a gun into the apartment. After defendant left, she ran outside but did not see where he had gone or whether anyone else was with him. As she reentered the apartment, she saw Ortega lying in the doorway on the floor. When Abreu entered from outside the apartment, Ms. Armstrong noticed that his face and arm were covered with blood.

Joe Conrad, one of defendant's accomplices, was allowed pursuant to a plea arrangement to plead guilty to second-degree murder, second-degree burglary, and assault with a deadly weapon with intent to kill inflicting serious injury. He received an active sentence of forty years. Conrad testified that, on the evening of 28 August 1991, Boysie Cunningham, Daryle Simons, and defendant asked him to go to Delmonte Court with them "[t]o go over there and to rob the Mexican guys." Conrad agreed and they went by his apartment to pick up his gun. Defendant was already armed with a .22 caliber handgun. Riding in defendant's blue Hyundai, they drove to Delmonte Court where they found the apartment empty. The four men rode around, visited some friends including Sheila Bailey and Frankie Glenn, drank some beer and wine, and then returned to Sheila Twiggs' apartment. Defendant and Conrad walked to the front door while Cunningham and Simons headed toward the rear of the building. This time, when defendant knocked on the door, a voice responded. Defendant yelled, "Give it up. Give it up," and shot the Mexican who opened the door. Conrad saw another Mexican running from the apartment and shot him in the mouth. Conrad then ran from the premises where he later found defendant,

Cunningham, and Simons. In the car, Conrad recalled defendant stating "he believed that the Mexican was dead."

Testifying pursuant to grants of immunity, Boysie Cunningham and Daryle Simons each stated they went to Delmonte Court to rob the Mexicans of cocaine and money. When they arrived, Cunningham and Simons headed to the side of the apartment complex to relieve themselves. At that moment, both men recall hearing defendant's knock on the front door, a voice from inside ask, "Who is it?," defendant's reply, and then four or five gunshots. According to Cunningham, defendant said his name in Spanish. Simons noted that defendant had a little handgun while Conrad was carrying a 12-gauge, sawed-off shotgun which he had said was not loaded. Neither Cunningham nor Simons was armed and neither of the men took anything from the premises.

Sheila Twiggs testified that while she was sitting in the car in front of her apartment with Michael Williams, she noticed a blue car drive up with four men inside. After parking the car, the men headed for her apartment. Defendant, whom she recognized, went to the door which was opened by Ortega. Ms. Twiggs heard defendant say, "Give it up. Where is it at?" Then she heard gunshots. Ms. Armstrong started screaming, "Mexico, Mexico." Ms. Twiggs and Michael Williams drove to a nearby truck stop intending to call the police. They failed to do so, but the police were finally notified from a neighbor's telephone. On recross-examination, Ms. Twiggs admitted she did not actually see defendant with a gun. She had previously testified defendant walked to the front door with his hands under his shirt.

The State presented forensic evidence tending to show that Ortega was shot at close range with a small caliber handgun and that unconsciousness was instantaneous. Robert Abreu was treated at Baptist Hospital for a gunshot wound to the mouth and neck. The bullet (from a small caliber gun—.22 or .25) was lodged against his spinal column and surgery was deemed too risky. He was discharged on 31 August 1991. Abreu did not testify at the trial because the prosecution was unable to locate him. Defendant offered no evidence at the guilt phase of the trial.

[1] In his first assignment of error, defendant contends the trial court erred in failing to give the requested instruction on voluntary intoxication as a defense to first-degree murder. Defendant argues

that the failure to give the instruction lessened the State's burden of proving each essential element beyond a reasonable doubt.

The test for determining when the trial court should give the voluntary intoxication instruction was set forth by this Court in *State v. Mash,* 323 N.C. 339, 372 S.E.2d 532 (1988), *on remand,* 328 N.C. 61, 399 S.E.2d 307 (1991). In *Mash,* the Court stated:

> A defendant who wishes to raise an issue for the jury as to whether he was so intoxicated by the voluntary consumption of alcohol that he did not form a deliberate and premeditated intent to kill has the burden of producing evidence, or relying on evidence produced by the state, of his intoxication. Evidence of mere intoxication, however, is not enough to meet defendant's burden of production. He must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form a deliberate and premeditated intent to kill.
>
>> The evidence must show that at the time of the killing the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. *State v. Shelton,* 164 N.C. 513, 79 S.E. 883 (1913). In absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon. *State v. McLaughlin,* 286 N.C. 597, 213 S.E.2d 238 (1975).

323 N.C. at 346, 372 S.E.2d at 536 (quoting *State v. Strickland,* 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987) (quoting *State v. Medley,* 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978))).

"When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to defendant." *Mash,* 323 N.C. at 348, 372 S.E.2d at 537. Since defendant presented no evidence relating to his degree of intoxication, we look solely to the evidence presented by the State.

None of the State's witnesses specifically testified that defendant was intoxicated on the evening of 28 August 1991 or the early morning hours of 29 August 1991. In fact, none of the State's witnesses specifically testified that defendant was drinking beer and wine or smoking cocaine on that evening. Boysie Cunningham testified that, while at the apartment of Sheila Bailey and Frankie

Glenn, everyone was "smoking reefer, some 'caine" and drinking wine and Budweiser. On the other hand, Joe Conrad recalled only Ms. Bailey and Ms. Glenn smoking the cocaine while everyone else sat around drinking beer and wine. Daryle Simons testified:

Q. What did you do at these girls' house?

A. We sat around, drunk [sic] beer and smoke[d] some cocaine.

Q. Who did?

A. Me, Boysie, and two girls.

Only Frankie Glenn specifically testified concerning defendant's consumption on the night in question. Her testimony was as follows:

Q. And state whether or not the defendant ever came back.

A. Yes. He went over there, he stayed for a while. And he came back. And the whole time he was there, the first time he came, he did not drink or he didn't do anything. So the second time he came back, when they had the wine, he did drank [sic] some wine and he turned it up like this and drunk [sic] it. And when he drunk [sic] it, his eyes got real big, like the devil was in him.

This evidence, even when viewed in the light most favorable to defendant, is insufficient under *Mash* to require the trial court to instruct the jury on voluntary intoxication. This assignment of error is without merit.

[2] Defendant next contends the trial court erred in failing to instruct on the lesser-included offense of second-degree murder. We find no merit in this contention.

"[W]hen the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the court required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it." *State v. Swift*, 290 N.C. 383, 407, 226 S.E.2d 652, 669 (1976). All the evidence in this case indicates that the murder was committed during an attempted robbery with a dangerous weapon. By statutory definition, a murder committed during the perpetration of an attempted armed robbery is first-degree murder. N.C.G.S. § 14-17 (Supp. 1992). The jury returned a verdict that defendant was guilty of first-degree murder under

the felony-murder rule and not of premeditated and deliberated murder. No evidence in the record before this Court warranted submission of an instruction on second-degree murder. This assignment of error is overruled.

[3] In his next assignment of error, defendant argues the trial court erred in failing to submit the lesser-included offense of assault with a deadly weapon inflicting serious injury, pursuant to N.C.G.S. § 14-32(b). In support of this argument, defendant contends that the evidence of intoxication affected his ability to form the specific intent necessary for the greater charge of assault with a deadly weapon with the intent to kill inflicting serious injury, *see* N.C.G.S. § 14-32(a) (1986), and that the jury should have been instructed it could find defendant guilty of the lesser-included offense.

As we have discussed in a previous assignment of error, the evidence of intoxication was insufficient to require the trial court to instruct on voluntary intoxication as a defense. Likewise, the evidence is insufficient to negate the necessary intent for assault with a deadly weapon with intent to kill inflicting serious injury.

The trial court instructed the jury as follows:

Now, I charge for you to find the defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, the State must prove four things beyond a reasonable doubt:

First, that the defendant or someone with whom he was acting in concert assaulted Robert Abreu by intentionally shooting him in the mouth.

Second, that the defendant or someone with whom he was acting in concert used a deadly weapon. A firearm is a deadly weapon.

And third, the State must prove that the defendant or someone with whom he was acting in concert had the specific intent to kill Robert Abreu.

And fourth, that the defendant or someone with whom he was acting in concert inflicted serious injury upon Robert Abreu. Serious bodily injury may be defined as such physical injury as causes great pain and suffering.

STATE v. OLIVER

[334 N.C. 513 (1993)]

So I charge if you find from the evidence and beyond a reasonable doubt that on or about August 29, 1991, James Terry Oliver, III, or someone with whom he was acting in concert assaulted Robert Abreu by intentionally shooting him in the mouth with a firearm and that James Terry Oliver, III, or someone with whom he was acting in concert intended to kill Robert Abreu thereby inflicting serious injury upon Robert Abreu, it would be your duty to return a verdict of guilty of assault with a deadly weapon with intent to kill inflicting serious injury.

However, if you do not so find or you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

The intent to kill "may be inferred from the nature of the assault, the manner in which it is made, the conduct of the parties, and other relevant circumstances." *State v. Revels*, 227 N.C. 34, 36, 40 S.E.2d 474, 475 (1946). In the present case, the evidence introduced at trial by the State tended to show that defendant, Joe Conrad, Daryle Simons, and Boysie Cunningham, acting in concert, went to the apartment of Sheila Twiggs during the early morning hours of 29 August 1991 to "rob the Mexican guys," that defendant and Conrad were armed, that defendant shot and killed Luis Ortega, and that Conrad shot Robert Abreu in the mouth from a distance of only a few feet. "A person who deliberately fires a pistol into the face of his victim at point-blank range must be held to intend the normal and natural results of his deliberate act." *State v. Jones*, 18 N.C. App. 531, 534, 197 S.E.2d 268, 270, *cert. denied*, 283 N.C. 756, 198 S.E.2d 726 (1973). All the evidence in this case tends to show a shooting with a deadly weapon with the intent to kill. Accordingly, the trial court did not err in refusing to submit the lesser offense of assault with a deadly weapon inflicting serious injury defined in N.C.G.S. § 14-32(b).

[4] Defendant next contends that the evidence was insufficient to persuade a rational trier of fact beyond a reasonable doubt of each essential element of burglary and attempted armed robbery. We find both of these arguments to be without merit and, therefore, overrule this assignment of error.

"To warrant a conviction for burglary the State's evidence must show that there was a breaking and entering during the night-time of a dwelling or sleeping apartment with intent to commit

a felony therein." *State v. Wilson*, 289 N.C. 531, 538, 223 S.E.2d 311, 315 (1976). Defendant contends the evidence shows the victim consented to his entry into the apartment and thus the necessary element of a "breaking" cannot be established. The law is, however, that a "breaking may be actual or constructive." *Id.* at 539, 223 S.E.2d at 316.

> "Constructive breaking, as distinguished from actual forcible breaking, may be classed under the following heads:
>
> "1. When entrance is obtained by threats, as if the felon threatens to set fire to the house unless the door is opened.
>
> "2. When, in consequence of violence commenced, or threatened in order to obtain entrance, the owner, with a view more effectually to repel it, opens the door and sallies out, and the felon enters.
>
> "3. When entrance is obtained by procuring the servants or some inmate to remove the fastening.
>
> "4. When some process of law is fraudulently resorted to for the purpose of obtaining an entrance.
>
> "5. When some trick is resorted to to induce the owner to remove the fastening and open the door, and the felon enters; as, if one knocks at the door, under pretense of business, or counterfeits the voice of a friend, and, the door being opened, enters."

*Id.* at 539-40, 223 S.E.2d at 316 (quoting *State v. Henry*, 31 N.C. 463, 467-68 (1849)).

Testimony from the State's witnesses disclosed that, while holding a loaded gun in his hand, defendant knocked on the door of the apartment, that when asked "Who is it," defendant gave his name, and, that when the door was opened, defendant entered. Once inside the doorway, defendant ordered Luis Ortega to "give it up" and then shot and killed him. This evidence supports the fifth type of constructive breaking—inducement of the occupant to open the door by knocking at the door under pretense of business.

[5] Similarly, defendant argues there is insufficient evidence to support the verdict of guilty of attempted armed robbery. Following the jury verdict, the trial court found that the attempted armed

robbery conviction merged with the murder conviction under the felony-murder rule and arrested judgment on that conviction only.

The evidence presented at trial tended to show that defendant and his accomplices went to the residence of Sheila Twiggs to rob the Mexicans of money and drugs. Defendant contends that illegal drugs and money from the sale of illegal drugs are not protected property; therefore, the attempt to steal such property is not a crime. Without the underlying crime of attempted armed robbery, defendant argues he was improperly convicted of first-degree murder under the felony-murder rule. We do not find this argument persuasive.

" 'Any money or personal property, corporeal in nature or capable of appropriation by another than the owner, and which is recognized by law as property, may be the subject of larceny.' " *State v. Guffey*, 265 N.C. 331, 333, 144 S.E.2d 14, 16 (1965) (quoting 32 Am. Jur. *Larceny* § 74 at p. 983 (1941) ). "To constitute the offense of robbery the property taken must be such as is the subject of larceny." *Guffey*, 265 N.C. at 333, 144 S.E.2d at 16. *See State v. Trexler*, 4 N.C. 188 (1815); 46 Am. Jur. *Robbery* § 8 at p. 142 (1943).

The indictment in the instant case describes the property as "drugs and United States currency." We have previously held that an indictment describing the property as "U.S. currency" was sufficient to support a conviction of attempted armed robbery, saying, "Money is recognized by law as property which may be the subject of larceny, and hence of robbery." *State v. Owens*, 277 N.C. 697, 701, 178 S.E.2d 442, 444 (1971), *overruled on other grounds by State v. Hurst*, 320 N.C. 589, 359 S.E.2d 776 (1987). Likewise, contraband may be the subject of armed robbery. As the California Supreme Court stated:

> 5. Defendant apparently concedes that robbery of contraband is subject to penal sanction. California was for some time the only jurisdiction to adhere to a contrary rule (*People v. Spencer* (1921) 54 Cal.App. 54, 201 P. 130), but our court has long since agreed to the overruling of this aberrant precedent. (*People v. Odenwald* (1930) 104 Cal.App. 203, 211-212, 285 P. 406, 286 P. 161 [opn. on den. of hg.].) Today the rule is universal that by prohibiting possession of an item, the government does not license criminals to take it by force or stealth from other criminals.

STATE v. OLIVER

[334 N.C. 513 (1993)]

*People v. Dillon*, 34 Cal. 3d 441, 457 n.5, 668 P.2d 697, 704 n.5 (1983). *See Guy v. State*, 108 Nev. 770, 839 P.2d 578 (1992), *cert. denied*, 507 U.S. ---, 123 L. Ed. 2d 275 (1993). *See also State v. Dwyer*, 226 Neb. 340, 345, 411 N.W.2d 341, 344 (1987) ("The taking of contraband by force is subject to penal sanction."); *State v. Pokini*, 45 Haw. 295, 367 P.2d 499 (1961) (holding specifically that a thief could be robbed of stolen goods).

In an indictment for armed robbery, "the kind and value of the property taken is not material—the gist of the offense is not the taking, but a taking by force or putting in fear." *Guffey*, 265 N.C. at 333, 144 S.E.2d at 16. "The gravamen of the offense is the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons in the perpetration of or even in the attempt to perpetrate the crime of robbery." *State v. Ballard*, 280 N.C. 479, 485, 186 S.E.2d 372, 375 (1972). This assignment of error is overruled.

[6]     In his next assignment of error, defendant contends the trial court erred in allowing Detective Young to testify to hearsay evidence from an absent witness, Michael Williams. The relevant testimony is as follows:

Q. (By Mr. Saunders, continuing) Detective Young, did you also talk to Michael Williams in this case?

A. Yes, sir, I did.

Q. Who was Michael Williams?

A. Michael Williams was—

MR. CARLTON: Objection, Your Honor. He—

THE COURT: Overruled.

A. Michael Williams was the gentleman who Sheila Twiggs had rode [sic] home with to Delmonte Court the night of this incident.

Q. Was he able to add anything to any of this?

MR. CARLTON: Objection, Your Honor.

THE COURT: Overruled.

MR. CARLTON: He has not been here.

THE COURT: Overruled at this time.

STATE v. OLIVER

[334 N.C. 513 (1993)]

A. The statement he made was—

    MR. CARLTON: Objection.

    THE COURT: Sustained.

Q. Just answer, was he able to add anything?

A. No.

    MR. CARLTON: Objection.

    THE COURT: Overruled.

The statement which defendant alleges is inadmissible hearsay is the detective's negative response to the question, "Was he able to add anything?"

Hearsay is defined by statute as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1992). Detective Young's testimony indicating that Mr. Williams was not able to add anything is not proscribed by the hearsay definition in that the testimony of Detective Young did not repeat, summarize, or intimate any oral or written assertions made by Michael Williams during the investigatory interview. The testimony merely contained the officer's conclusion based on his interview with Michael Williams. By definition, this testimony is not hearsay. We overrule this assignment of error.

[7] Defendant next argues that the trial court's reinstructions on breaking and entering were confusing, misleading, and inaccurate thus constituting error prejudicial to his defense. In essence, defendant contends that the State failed to prove that Ortega, as an occupant of the apartment, lacked authority to consent to entry by defendant, and, thus, the State failed to establish the requisite wrongful entry for a first-degree burglary conviction. We have carefully reviewed defendant's argument and find it to be without merit.

During their deliberations, the jurors requested clarification on two matters. In response to their request for a further definition of breaking and entering, the trial court informed them he could add no more than what appeared on the written copy of the jury instructions he had previously provided.

With respect to the second question, the court read the question as follows: "[T]he second question is that the fifth item says the tenant must give consent, comma; who is the tenant?" The court responded:

> First of all, I want to refer you to the fifth element. The fifth element—and I'm not just playing words with you—the fifth element does not say that the tenant must give consent. The fifth element says that the State must prove beyond a reasonable doubt that the tenant did not give consent.

JURY FOREMAN: Right.

THE COURT: When you say, comma, who is the tenant? I can only tell you that that is a matter of evidence and it is your duty to recall the evidence. Not this Court.

While the jury continued its deliberations, defense counsel requested the court to add "occupant" to the jury instructions so the fifth element would read that "the tenant or occupant did not consent to the breaking and entering." The trial court refused, based on the evidence, to make the requested change in the instructions on breaking and entering.

> "The constituent elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein." *State v. Person,* 298 N.C. 765, 768, 259 S.E.2d 867, 868 (1979). The breaking and entering of the dwelling must be without the consent of anyone authorized to give consent. *State v. Boone,* 297 N.C. 652, 256 S.E.2d 683 (1979); *State v. Friddle,* 223 N.C. 258, 25 S.E.2d 751 (1943); *State v. Goffney,* 157 N.C. 624, 73 S.E. 162 (1911); *State v. Rowe,* 98 N.C. 629, 4 S.E. 506 (1887); *State v. Tolley,* 30 N.C. App. 213, 226 S.E.2d 672, *disc. rev. denied,* 291 N.C. 178, 229 S.E.2d 691 (1976); Annot., *Burglary—Entry With Consent,* 93 A.L.R. 2d 531 (1964).

*State v. Meadows,* 306 N.C. 683, 689-90, 295 S.E.2d 394, 398 (1982), *overruled on other grounds by State v. Grier,* 307 N.C. 628, 300 S.E.2d 351 (1983). The owner's consent, or consent by another authorized individual, may act to negate the requisite element of breaking necessary for a burglary conviction.

However, in light of the specific facts presented in this case, we do not reach the precise question posed by the parties — whether Ortega, a house guest, had the authority to consent to defendant's entry into the apartment. Rather, we find that the circumstances under which defendant, armed with a pistol, gained entry at 2:30 in the morning were sufficient to negate any issue of whether Ortega was authorized to or granted consent to defendant's entry. Nothing in the record suggests that the victims were expecting defendant and Conrad. Similarly, no evidence suggests that had Ortega known defendant and Conrad were standing with guns poised outside the door, he would have opened the door. Whether defendant's saying his name in Spanish when asked who was there connotes consent or trickery was for the jury to decide.

As we have previously discussed, the evidence in the case supported a "constructive" breaking — inducement of the occupant to open the door by means of knocking at the door under pretense of business. "Where 'consent' is obtained by fraud or trickery, however, the law treats defendant's action as a 'constructive breaking,' sufficient to sustain conviction under the statute." *State v. Wheeler*, 70 N.C. App. 191, 195, 319 S.E.2d 631, 634, *disc. rev. denied*, 312 N.C. 624, 323 S.E.2d 925 (1984), *cert. denied*, 316 N.C. 201, 341 S.E.2d 583 (1986). This assignment of error is overruled.

[8] Since we find no error in defendant's first-degree burglary conviction, defendant's argument that the trial court erred in failing to submit the lesser-included offense of felonious breaking or entering also fails. *See State v. Jolly*, 297 N.C. 121, 254 S.E.2d 1 (1979). "Where the State's evidence is clear and positive as to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the judge to refuse to instruct on the lesser offense." *State v. Peacock*, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985). All the evidence in this case shows a "constructive" breaking and entering during the nighttime into an apartment with people sleeping inside with the intent "to rob the Mexicans." This assignment of error is overruled.

[9] In his next assignment of error, defendant asserts that the trial court erred in using the fact that defendant was armed with a deadly weapon at the time of the breaking and entering to aggravate his sentence for first-degree burglary. The portion of the Fair Sentencing Act upon which defendant relies provides that "[e]vidence necessary to prove an element of the offense may

not be used to prove any factor in aggravation." N.C.G.S. § 15A-1340.4(a)(1) (1988). Defendant contends the same evidence, namely, the use of a deadly weapon, was used to prove the State's theory of entry for the burglary conviction. While urging us to reexamine our position, defendant concedes that his argument is contrary to previous holdings of this Court.

This Court has consistently held that possession of a deadly weapon may be used to aggravate the sentence for a burglary conviction when the use of the same weapon constitutes a separate offense. *State v. Taylor*, 322 N.C. 280, 367 S.E.2d 664 (1988); *State v. Toomer*, 311 N.C. 183, 316 S.E.2d 66 (1984); *State v. Chatman*, 308 N.C. 169, 301 S.E.2d 71 (1983). In *Taylor*, defendant possessed but did not use the deadly weapon—a hammer—at the time he illegally entered the victim's mobile home. He subsequently used the hammer to attack his victim thus forming the basis for the felonious assault charge. In *Toomer*, defendant possessed but did not use a handgun when he illegally entered the apartment but then used the weapon to threaten the victim during a sexual assault. Finally, in *Chatman*, a knife was used in committing the rape but was not used in the burglary. In each of these cases, defendant possessed but did not use a deadly weapon at the time he committed the burglary offense. As such, the trial court in each case properly found the fact that defendant was armed with a deadly weapon to be a factor in aggravation of defendants' sentences for first-degree burglary.

In the present case, defendant possessed but did not use a gun at the time he tricked the occupants into opening the apartment door. Once he entered, defendant used the gun to attempt to steal money and drugs and then to shoot and kill Luis Ortega. These subsequent actions formed the basis for the attempted armed robbery and the first-degree murder charges.

As in *Taylor*, *Toomer*, and *Chatman*, the trial court did not err by aggravating defendant's sentence on the first-degree burglary conviction with the fact that defendant was armed with a deadly weapon at the time he committed the initial crime of burglary. "The possession of a weapon is not an essential element of first-degree burglary and therefore the challenged aggravating factor does not violate the prohibition of G.S. 15A-1340.4(a)(1) . . . ." *Toomer*, 311 N.C. at 194, 316 S.E.2d at 72. This assignment of error is also without merit.

**[10]** Finally, defendant contends the trial court erred in aggravating his sentence based on a finding that defendant had prior convictions punishable by more than sixty days' confinement. Once the jury was excused, the district attorney presented evidence to the court of defendant's previous convictions for purposes of sentencing on the convictions for first-degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury.

The State informed the court of defendant's previous convictions in North Carolina for misdemeanor larceny in 1986; carrying a concealed weapon in 1986 and, again, in 1991; possession of toxic vapors in 1991; and, assault with a deadly weapon inflicting serious injury in 1991. Furthermore, he was convicted in 1988 in the State of Georgia of giving a false name to law enforcement officers and for knowingly and willingly obstructing and hindering a law enforcement officer in the exercise of his duties. At the time of this trial, defendant's 1991 conviction for assault with a deadly weapon inflicting serious injury was on appeal to the North Carolina Court of Appeals and a final decision had yet to be rendered. Evidence of the assault was previously presented during the penalty phase of the trial through testimony of the victim and a certified copy of the judgment. Although at the pretrial hearing before Judge Greeson on 13 January 1992, defendant had argued his motion to exclude the prior conviction on appeal, defendant failed to object when the testimony was introduced into evidence before the jury during sentencing on the first-degree murder conviction and, again, when the State presented the evidence to the court for sentencing on the burglary and felonious assault convictions. As a matter of course, defendant stipulated to each conviction, except for the Georgia conviction of obstructing a law enforcement officer in the exercise of his duties.

For purposes of the Fair Sentencing Act, a prior conviction is defined as when one has pled guilty, pled no contest, or been adjudicated guilty, and judgment has been entered, the time for appeal has expired or the conviction has been finally upheld on direct appeal. N.C.G.S. § 15A-1340.2(4) (1988); *State v. Dorsett*, 81 N.C. App. 515, 344 S.E.2d 342 (1986). However, having failed to object to the use of his previous conviction on the ground that it was on appeal and having stipulated to the validity of his prior conviction, defendant has waived his right to challenge on appeal the use of the assault conviction as an aggravating factor. N.C. R. App. P. 10(b)(2). " 'It is well settled that with the exception

of evidence precluded by statute in furtherance of public policy [which exception does not apply in this case], the failure to object to the introduction of the evidence is a waiver of the right to do so, and its admission, even if incompetent is not a proper basis for appeal.'" *State v. Hunter,* 297 N.C. 272, 278-79, 254 S.E.2d 521, 525 (1979). Furthermore, the evidence of defendant's assault conviction was only one of several convictions punishable by more than sixty days' confinement. Thus, the trial court properly found as an aggravating factor that defendant had prior convictions punishable by more than sixty days' confinement. This assignment of error is overruled.

For the foregoing reasons, defendant James Terry Oliver received a fair trial free of prejudicial error.

NO ERROR.